OPINION
{¶ 1} Appellant, Edward Jack Murphy, appeals from the judgment of the Geauga County Court of Common Pleas awarding summary judgment in favor of appellee, Penske Logistics.
 {¶ 2} On May 18, 2000, appellee hired appellant to be a team truck driver with Karen Roggenkamp ("Roggenkamp"). At the time he was hired, appellant was sixty-six years old. Several years later, on March 6, 2003, appellant and Roggenkamp were returning from a delivery in New Jersey. As they began traveling west through *Page 2 
Pennsylvania on Route 80, it began to snow. As the snow fell harder, the road became covered. Although the road was not slippery, appellant drove below the speed limit to suit the conditions. After being on Route 80 for approximately eighty-two miles, appellant approached a rest area. Appellant changed lanes from right to left to allow merging traffic. As he passed merging vehicles, he approached a hill. Just over the hill's crest appellant encountered a tractor-trailer that had jackknifed in the left lane. The truck was blocking the entire left lane preventing appellant's passage. However, due to traffic in the right lane, appellant was unable to immediately change lanes. In an attempt to avoid directly striking the jackknifed truck, appellant braked and veered to the right. As he veered, he sideswiped the jackknifed truck. He then struck another truck in front of him. After the impact, appellant's truck came to rest on the road.
 {¶ 3} Appellant asserted he was unable to dodge the truck to the left because it blocked his passage. He further stated he was unwilling to take his truck off the road to the right because the truck would have plunged down into a deep gully. Accordingly, appellant attempted to slow his truck as best he could so to avoid heavy impact. As a result of the collision, three vehicles were damaged: the two tractor-trailers appellant struck and the truck he was driving. After the accident, appellant's truck had to be towed because it had no steering. The accident caused over $30,000 damage to the truck appellant was driving.
 {¶ 4} After appellant's accident, appellee conducted an investigation pursuant to its manual of uniform procedures for safety compliance and corrective action. The manual, which appellee used to ensure consistency in investigation and corrective *Page 3 
action relating to vehicle accidents, categorized all vehicle accidents under the following categories:
 {¶ 5} "1) Minor Vehicle Accidents:
 {¶ 6} "— No fatalities
 {¶ 7} "— No injuries
 {¶ 8} "— Property damage (less than $5,000)
 {¶ 9} "— No hazardous material or fuel spills
 {¶ 10} "2) Major Vehicle Accidents — Accidents involving one or more of the following:
 {¶ 11} "— Fatality(ies)
 {¶ 12} "— Injury(ies) requiring hospitalization or treatment away from accident scene
 {¶ 13} "— Multiple vehicles (3 or more)
 {¶ 14} "— Property damage (greater than $5,000)
 {¶ 15} "— Hazardous material or fuel spills
 {¶ 16} "— An accident which totals a Penske vehicle and/or the cargo
 {¶ 17} "— Other circumstances that could expose Penske to significant liability
 {¶ 18} "3) DOT Recordable Accident — An occurrence involving a commercial motor vehicle operating on a highway in Interstate or Intrastate commerce which results in:
 {¶ 19} "— Fatality;
 {¶ 20} "— Bodily injury to a person who, as a result of injury, immediately receives medical treatment away from the scene of the accident; or *Page 4 
 {¶ 21} "— One or more vehicle incurring disabling damage as a result of the accident, requiring the vehicle to be transported away from the scene by a tow truck or other vehicle.
 {¶ 22} "4) Preventable Accidents — An accident that could have been avoided if the Penske Logistics associate had taken reasonable and prudent action."
 {¶ 23} The manual further sets forth the disciplinary action appellee could take for the various types of accidents. For instance, an employee involved in a "minor preventable vehicle accident" would be subject to the following discipline:
 {¶ 24} "First preventable Vehicle Accident — Written warning and appropriate remedial training.
 {¶ 25} "Second Preventable Vehicle Accident (within 24 months of first accident) — Written warning and appropriate remedial training.
 {¶ 26} "Third Preventable Vehicle Accident (within 24 months of first accident) — Final written warning, 3-day suspension, and appropriate remedial training before associate is assigned to regular duties.
 {¶ 27} "Fourth Preventable Vehicle Accident (within 24 months of first accident) — Termination with approval from the Human Resources Department."
 {¶ 28} Alternatively, an employee involved in a "major preventable vehicle accident" would be subject to the following discipline:
 {¶ 29} "Any time an associate is involved in a major preventable vehicle accident or major DOT Recordable Accident, the associate shall be placed out of service/suspended immediately, pending review of facts. A major preventable accident will be grounds for discharge, but the LCM must review accident details with the Area *Page 5 
Manager, Regional Safety Manager, and Regional Human Resources manager before issuing the final discipline. If the accident is ruled non-preventable, the associate will be compensated for lost work."
 {¶ 30} Appellee convened its safety committee to review the various facts collected from the investigation. Appellee's investigation committee ultimately determined appellant had been in a "major, preventable, DOT recordable" accident, as defined in the manual. Pursuant to the disciplinary rules set forth in the manual, appellant was subject to discharge. After reviewing appellant's record and considering the circumstances of the accident, appellee concluded appellant should be terminated. Appellee informed appellant of its decision by way of a letter on June 6, 2003. The letter stated, in part:
 {¶ 31} "After speaking with you, reviewing your written statement and reviewing the police report, we determined that you failed to do everything reasonably possible to avoid the accident. Moreover, it is clear that you were driving too fast for the road conditions at the time which resulted in this major preventable "DOT Recordable" accident occurring.
 {¶ 32} "In view of the above, effective June 6, 2003 your employment with Penske Logistics is terminated. We are sorry that this became necessary, however, this is consistent with the disciplinary action we have administered following other major DOT Recordable accidents."
 {¶ 33} On January 18, 2006, appellant filed a complaint in the Geauga County Court of Common Pleas alleging age discrimination under R.C. Chapter 4112 and wrongful discharge in violation of Ohio public policy. After significant discovery, on *Page 6 
January 7, 2007, appellee moved the court for summary judgment. On February 5, 2007, appellant duly opposed appellee's motion. On March 16, 2007, after considering the parties' relative arguments, the trial court awarded summary judgment in appellee's favor.
 {¶ 34} Appellant filed a timely notice of appeal from the trial court's judgment and now asserts two errors for our review. Appellant's first assignment of error alleges:
 {¶ 35} "The trial court erred when it granted appellee's motion for summary judgment because the appellant clearly satisfied all four prongs of the prima facie case for age discrimination as stated in Coryell v.Bank One Trust Co., 101 Ohio St.3d 175 (2004)." (sic.)
 {¶ 36} In order for summary judgment to be granted, the moving party must prove:
 {¶ 37} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 38} In relation to this standard, the Supreme Court of Ohio has observed:
 {¶ 39} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those *Page 7 
evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-107. (Emphasis omitted.)
 {¶ 40} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 41} Appellate courts review a trial court's award of summary judgment de novo, i.e., "* * * independently and without deference to the trial court's determination." Brown v. Scioto County Comm'rs (1993),87 Ohio App.3d 704, 711. As appellate courts must evaluate the record in a light most favorable to the nonmoving party, an award of summary judgment will be reversed only if reasonable minds could find for the party opposing the motion. Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 42} R.C. 4112.02(A), Ohio's general anti-discrimination statute, states that it is an "unlawful discriminatory practice" for an employer to discriminate "* * * against [any] person with respect to * * * tenure, terms [or] conditions * * * of employment," "because of the [person's] * * * age * * *." Further, R.C. 4112.14(A) specifically prohibits an employer from discharging "without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."
 {¶ 43} Ohio courts examine state employment-discrimination claims under federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000 et seq., Title 42, U.S. Code. Coryell v. Bank OneTrust Co., 101 Ohio St.3d 175, 179, *Page 8 2004-Ohio-723; see, also, Little Forest Med. Ctr. Of Akron v. Ohio Civ.Rights Comm. (1991), 61 Ohio St.3d 607, 609-610. "Title VII jurisprudence imposes upon the plaintiff the initial burden of establishing a prima facie case of discrimination." Bucher v. SibcyCline, Inc. (2000), 137 Ohio App.3d 230, 239, citing McDonnell DouglasCorp. v. Green (1973), 411 U.S. 792, 802. Once a plaintiff establishes a prima facie case, the employer is required to set forth some legitimate, nondiscriminatory basis or bases for its action. Id. If the employer is able to meet this burden, the plaintiff is then afforded "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs v. Burdine (1981),450 U.S. 248, 253.
 {¶ 44} To establish a prima facie case of age-discrimination, where no direct evidence is available, a plaintiff must demonstrate that he or she:
 {¶ 45} "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." Coryell, supra, at paragraph one of the syllabus.
 {¶ 46} Here, the trial court determined that appellant met the first three prongs of the foregoing test but failed to put forth adequate evidence relating to the fourth element. Accordingly, the trial court concluded appellant was unable to assert a prima facie case for age-discrimination and thus appellee was entitled to summary judgment on this claim. Appellant contends the trial court erred in drawing this conclusion because he put forth sufficient evidence to create a genuine issue of material fact as to *Page 9 
whether he was replaced by or his discharge permitted the retention of a person of substantially younger age.
 {¶ 47} After a thorough review of the deposition testimony, affidavits, and other record materials, we hold appellant failed to demonstrate that he was replaced by or appellee retained a person of substantially younger age as a result of his discharge. There is no evidence in the record indicating appellant was replaced by or his discharge permitted the retention of a substantially younger driver. Appellant points to two "substantially younger" drivers, David Fry, 29, and Owen Hazen, 39, who had accidents and were not terminated; specifically, on November 1, 2002, Mr. Fry's vehicle struck a low bridge and had to be towed from the scene. David McKinstry, appellee's then safety and compliance specialist, testified Mr. Fry's accident was deemed a "minor preventable vehicle accident." Pursuant to the disciplinary policies in appellee's manual, such an infraction is punishable by a written warning and appropriate remedial training.
 {¶ 48} Mr. Hazen, on the other hand, had three accidents: January 8, 2002, May 8, 2002, and January 26, 2003. According to the record, each of the accidents were minor, preventable accidents.[1] Because each of the three minor preventable accidents occurred within a twenty-four month period, Mr. Hazen was subject, pursuant to the Manual, to a third, three day suspension, and appropriate remedial training. After the third accident, Mr. Hazen was placed on a three day suspension and one year of probation. *Page 10 
 {¶ 49} Mr. McKinstry testified these accidents were all deemed minor, preventable vehicle accidents. Although Mr. Fry and Mr. Hazen remained drivers for appellee after their respective accidents, no evidence was adduced demonstrating these drivers replaced appellant or his discharge permitted their retention. In fact, the evidence that Mr. Fry's and Mr. Hazen's respective accidents occurred before appellant's accident shows their retention was irrelevant to appellant's discharge. Without some evidence indicating Mr. Fry and/or Mr. Hazen took over appellant's route or that appellant's discharge "allowed" the younger men to remain drivers, appellant has failed to provide any evidence relating to the fourth element of the Coryall test. Accordingly, appellant failed to produce sufficient evidence to create a genuine issue of material fact and appellee was entitled to summary judgment as a matter of law.
 {¶ 50} Although appellant failed to meet his burden as it relates to the elements of the Coryell test, we bear in mind that the "ultimate inquiry [in an age discrimination case is] whether evidence of age discrimination is present in the case[,]" Kohmescher v. Kroger Co.
(1991), 61 Ohio St.3d 501, 504. The Supreme Court has underscored that the law does not require a "rigid, mechanized, or ritualistic" exercise to make out a prima facie case for discrimination. Id. As such, other appellate districts, following the lead of federal courts, have permitted a plaintiff to meet his or her burden by showing, in addition to the first three elements, that he or she was "`treated differently than a similarly situated employee from outside the protected class.'"Lange v. Honda of America, 3d Dist. No. 14-03-49, 2004-Ohio-2060, at ¶ 9, quoting, Policastro v. Northwest Airlines Inc. (C.A. 6, 2002),297 F.3d 535; see, also, Karaba v. Alltell Communications, Inc., 8th Dist. No. 80546, 2002-Ohio-4583, at ¶ 14; Howell v. Summit Cty., 9th Dist. No. *Page 11 
20958, 2002-Ohio-5257, at ¶ 15; Caldwell v. Ohio State University, 10th Dist. No. 01AP-997, 2002-Ohio-2393, at ¶ 65-66; Bucher at 240.
 {¶ 51} A claimant attempting to utilize this alternative "disparate treatment" prong must produce evidence which, at a minimum, establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-protected employees. Howell, supra. The parties to the comparison must be similarly situated in all pertinent respects, that is they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. ToledoHosp. (C.A. 6, 1992), 964 F.2d 577, 583. In essence, the plaintiff and employee with whom the plaintiff seeks to compare himself must be similar in all respects relevant to the issue under consideration.Bucher, supra, at 241, citing Ercegovich v. Goodyear Tire RubberCo. (C.A. 6, 1998), 154 F.3d 344, 352.
 {¶ 52} As indicated above, the two non-protected employees, Mr. Fry and Mr. Hazen, were involved in accidents, all of which were deemedminor, preventable vehicle accidents (with one of Mr. Hazen's accidents being a minor, preventable, DOT Recordable Accident). However, appellant's accident was deemed a major, preventable vehicle accident and a major, DOT Recordable Accident.[2] The designation of appellant's accident as major illustrates the fundamental disanalogy between his accident and those of Mr. Fry and Mr. Hazen. As a result, the evidence shows the *Page 12 
accidents to which appellant draws his comparison were of a different quality involving significantly different damage scenarios. Thus, appellant has failed to create a genuine issue of material fact regarding a claim for disparate treatment.
 {¶ 53} Next, appellant asserts the trial court misconstrued the evidence because his accident should have been designated "non-preventable." In appellant's view, appellee's decision to designate his accident as "preventable" was illegitimate given the road conditions and circumstances leading up to the accident, viz., the snowy road, appellant's speed (40-45 m.p.h. in a 65 m.p.h. zone), the necessity of his lane choice given merging traffic, and the existence of a "jack-knifed" truck blocking his passage.
 {¶ 54} Although the designation of the accident as "non-preventable"may have permitted appellant's retention pursuant to the manual, we fail to see the relevance of the accident's designation in the context of the current analysis. Each of the accidents to which he seeks to compare his situation were designated as preventable. For the issue of preventability to become an issue germane to our inquiry, not only would the Fry and Hazen accidents have to be designated "major" (they were not), at least one of the accidents involving Fry or Hazen would have to have been designated "non-preventable" (none were so designated). Because all the accidents at issue were designated as preventable, appellant cannot premise a claim for disparate treatment upon this his assertion that his accident was erroneously labeled preventable.[3]
 {¶ 55} Appellant's first assignment of error is overruled. *Page 13 
 {¶ 56} Appellant's second assignment of error contends:
 {¶ 57} "The trial court erred by granting summary judgment on the issue of wrongful discharge because appellant presented sufficient evidence to show that there was a genuine issue of material fact to prove a claim for wrongful discharge under the edicts of Greeley v.Miami Valley Maintenance Contrs., Inc., 49 Ohio St.3d 228 (1990)." (Sic.)
 {¶ 58} Under his second assigned error, appellant contends the trial court erred in awarding appellee summary judgment as his discharge contravened a clear public policy prohibiting age discrimination. InGreeley, the Supreme Court of Ohio determined "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged * * * for a reason prohibited by statute." Id. at paragraph one of the syllabus. Here, appellant asserts Ohio Law, under R.C. Chapter 4112, establishes a clear public policy against discharging an individual on the basis of his or her age.
 {¶ 59} Recently, in Leininger v. Pioneer Natl. Latex,115 Ohio St.3d 311, 2007-Ohio-4921, the Supreme Court held the common law tort for wrongful discharge premised upon age discrimination is no longer viable in Ohio. Id. at syllabus. The Court pointed out that R.C. Chapter 4112 provides for "the panoply of legally recognized pecuniary relief" as well as other remedies such as reinstatement or injunctive relief. Id. at ¶ 29-30. Accordingly, the statutory scheme affords complete relief to an aggrieved party alleging age discrimination. Id. at syllabus. Pursuant to Leininger, the Court's holding in Greely is no longer applicable to wrongful discharge claims premised upon age discrimination. Appellant's second assignment of error therefore lacks merit. *Page 14 
 {¶ 60} For the reasons discussed herein, appellant's two assignments of error lack merit and the judgment of the Geauga County Court of Common Pleas is therefore affirmed.
DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur.
[1] Mr. Hazen's January 26, 2003 accident was also deemed a minor, preventable, DOT Recordable Accident.
[2] Mr. McKinstry testified appellant's accident was designated "major" because of the amount of damage involved, i.e., $33,627.37, he was moving too fast for conditions, and was in an inappropriate lane as he approached the hill. In relation to these issues, Mr. McKinstry testified: "[Appellant] made unsafe decisions that put him in jeopardy and the equipment in jeopardy and other lives in jeopardy * * *."
[3] Even assuming appellant could set forth a prima facie case for age discrimination, the burden would shift to appellee to assert a legitimate, nondiscriminatory reason for its action. As discussed above, the policies set forth in appellee's safety manual demonstrate that appellant's accident, which resulted in over $30,000 in damage, was a de facto "major vehicle accident" which, pursuant to the disciplinary rules of the company, is a sufficient ground for termination. Because the safety and disciplinary policies were applied to all employees, including those with which appellant attempts to compare himself, appellant would be unable to show appellee's justification for discharge was a pretext for discrimination. *Page 1